Exhibit B

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

KYVETTE Z. GIDDERON  
440 Pamela Road, Apt. C  
Glen Burnie, MD 21061-4695  

    *Plaintiff*

v.

CYNOSURE, INC.,  
a Delaware corporation having  
principal offices in Massachusetts,  
5 Carlisle Rd.  
Westford, MA 01886-3601  

    Serve On:  
    CT CORPORATION SYSTEM,  
    Resident Agent  
    155 Federal St., Ste. 700  
    Boston, MA 02110-1727  

    *Defendant*

Civil No.: _____

\* \* \* \* \* \* \*

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Kyvette Z. Gidderon, by her attorney, Christopher L. Beard, brings this suit against Defendant, Cynosure, Inc., and in support of her cause of action states the following:

### Parties, Jurisdiction, and Venue

1. Plaintiff, Kyvette Z. Gidderon, (hereinafter, "Plaintiff") is a 30-year-old resident of the State of Maryland with a home address of 8055 Greenleaf Terrace, Apartment 33, Glen Burnie, Maryland 21061-4695. At all times relevant to this matter, Plaintiff was a resident of the State of Maryland;

2. Defendant, Cynosure, Inc., is a foreign corporation chartered, organized, and

registered under the laws of the State of Delaware but registered in Massachusetts as a foreign corporation where its principal offices are located at 5 Carlisle Road, Westford, Massachusetts 01886-3601 and whose Resident Agent in Massachusetts is CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110-1727;

3. Upon information and belief, Defendant's principal operations within the State of Maryland and in particular in Baltimore City, involve the promotion, sale, and maintenance of a broad array of laser-based aesthetic and medical treatment devices used primarily by aesthetics and medical providers for dermatological applications such as hair removal and skin revitalization. On an isolated and sporadic basis, Defendant sold and performed some requested maintenance of the laser treatment system located at the medical offices of Skin Oasis Dermatology, 2401 Brandermill Boulevard, Suite 240, Gambrills, Maryland 21054-1692;

4. The Circuit Court for Baltimore City has subject-matter jurisdiction pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 1-501;

5. The Circuit Court for Baltimore City has jurisdiction over Defendant pursuant to MD. CODE ANN., CTS. & JUD. PROC. §§ 6-102 and 6-103;

6. Venue is proper in the Circuit Court for Baltimore City pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-201 insofar as Defendant carries on a regular business in, and otherwise engages in a vocation, trade, or profession in medical and aesthetic business offices located in Baltimore City;

## Factual Background

7. The allegations contained in Paragraphs 1 through 6 are fully incorporated as though they were fully restated herein;

8. Since November 2014, Plaintiff has been employed as a medical manager and aesthetician, licensed by the Maryland Board of Cosmetologists, at the aforesaid medical offices of Skin Oasis Dermatology;

9. Plaintiff has been trained in the proper protocols to perform hair removal by application of laser technology and has done so as a medical assistant and esthetician for at least 8 years;

10. On July 21, 2017 at approximately 3:00 p.m., Plaintiff prepared to perform hair removal on her own body using a laser device, a model known as an "Elite+" manufactured by Defendant and acquired by Skin Oasis Dermatology from Defendant;

11. The Elite+ laser system, or work station, consists of a base unit connected by a cord to a handpiece that applies the laser beam to a subject's body;

12. Plaintiff connected the laser device to an electrical outlet, turned it on and donned her safety goggles. She then set up the laser for hair removal by programming in the settings provided by a physician and pushed the button for a systems-check;

13. Once the laser was ready, Plaintiff applied aloe gel to her left leg and began the treatment by holding in her right hand the laser's corded handpiece, while she was standing with her left leg resting on the extension of a medical chair;

14. Within the first minute of Plaintiff's treatment and totally without warning, the laser virtually exploded, making a very loud, booming noise, while emitting a bright light and black smoke;

15. Plaintiff was mortified as she watched the cord from the base unit expand while simultaneously in the handpiece she felt the hot, tingling sensation of an electrical shock and accompanying numbness, a deadly electrical current of 30 amperes surging

3

instantaneously through her right little finger, then her other fingers, then her right hand and arm;

16. Plaintiff was unable to drop the energized laser handpiece for about ten seconds since the electrical charge that jolted into her right hand had caused the muscles of her hand to involuntarily contract, forcefully gripping the energized handpiece;

17. As a result of the malfunctioning laser's precipitous flare-up and electrification, Plaintiff suffered painful burns, severe swelling, and hypersensitivity to her right hand, leaving it covered by residue with dark lineal marks etched into the palmer side of her right hand;

18. After being assisted by a co-worker, Plaintiff informed Dr. Katina Miles – the office dermatologist and owner of the practice – about the laser's major malfunction, while an employee of Defendant happened to be present;

19. Upon immediately contacting Defendant's company headquarters, a Cynosure representative claimed that the malfunction was due to user error and blamed Plaintiff;

20. Dr. Miles emphatically responded that it was not user error since the Plaintiff had been trained on this particular Cynosure model and had used other lasers of the same type without incident for the past 8 years;

21. Plaintiff was instructed by Dr. Miles to apply ice and steroid cream on her injured right hand to address the swelling and burns;

22. Plaintiff noticed bluish purple lines running through her hand and fingers and upon arrival at home she experienced greatly intensified pain, as the right hand appeared almost twice the size as her left hand;

23. After sending Dr. Miles photos, Plaintiff was advised to report to a medical clinic for examination and treatment of her injured right hand;

24. Plaintiff presented to Patient First, in Odenton, Maryland and was diagnosed with electrical burns in her right hand from electrocution and a sprain to the right little finger;

25. In the days thereafter, to treat the continuing severe pain in her right hand and fingers, and other lasting symptoms such as tingling, numbness, spasms, and weakness of the right hand and right arm and some problems with other parts of her body, Plaintiff followed up with specialists and emergency care, including a hand surgeon and a neurologist. Plaintiff was prescribed Gabapentin (300 mg) and Lyrica (100 mg) for neuropathic pain;

26. On October 23, 2017, Plaintiff presented to Thomas R. Dennis, M.D., an orthopedist and hand surgeon, who noted that three months after electrocution Plaintiff was still having significant pain with hypersensitivity along the ulnar border of the hand into the little finger — her pain was rated as severe, up to a 10 during work and activity;

27. Upon assessment of Plaintiff's symptoms and behaviors, Dr. Dennis diagnosed Plaintiff to be suffering from a complex regional pain syndrome or reflex sympathetic dystrophy, for which treatment to break the cycle of pain includes a course of stellate ganglion blocks. These "blocks" are actually injections into Plaintiff's neck of local anesthetic that she will have to undergo to block the sympathetic nerves located on either side of her voice box, so that the pain in her injured hand may be reduced;

28. Plaintiff's potentially deadly electrocution by Defendant's laser device, therefore, had not only caused her to suffer extremely painful burns and injury to her right hand but left her with deformities likely permanent, insofar as she has ongoing symptoms

of pain and loss of mobility. Plaintiff is still unable to fully perform in her chosen profession of aesthetics and because she is having anxiety about exposure to the laser machines, she is being treated by a psychologist;

29. These various and serious medical problems have caused her substantial physical and mental suffering, and require that she undergo many sessions of physical therapy and acupuncture as well as incur significant economic loss, including for medical expenses, which are ongoing;

## Count I
### (Negligence)

30. The allegations contained in Paragraphs 1 through 29 are fully incorporated as though they were fully restated herein;

31. Defendant owed to Plaintiff a duty to use reasonable care in the engineering, design, manufacture, and sale of their laser-based aesthetic and medical devices, which duty would have prevented or eliminated the risk that Defendant's model Elite+ would malfunction and gravely injure an esthetician or care provider using one of the devices. Defendant breached this duty;

32. Plaintiff was unaware of the dangerous design and condition of the Elite+ laser device, which caused her to be electrocuted, a condition that was foreseeable and preventable by Defendant, which it would recognize through its training, education, and experience was required in proper engineering and design of complex laser systems;

33. Defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the design, manufacture, and sale of its medical device, but failed to do so, and was therefore negligent. The Plaintiff is among the class of persons designed

to be protected by these statutes, laws, regulations, safety codes or provisions pertaining to the design, manufacture, and sale of similar medical devices and equipment;

34. Defendant had a duty to design and manufacture their laser-based aesthetic/medical equipment to be reasonably safe and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, but Defendant failed to do so and was therefore negligent;

35. Plaintiff further alleges that all of her damages and losses, past, present, and future were caused solely and proximately by the negligence of Defendant, without any negligence or want of care on the part of Plaintiff contributing thereto;

36. Defendant has been given proper notice of the claim; and

37. As a direct and proximate result of Defendant's acts and omissions of negligence, Plaintiff sustained damages as follows:

   a. Extreme pain and agony which continues to the present and is expected to continue for the rest of her life;

   b. Debilitating, permanent disfigurement of her dominant, right hand and consequent inability to enjoy the normal functions of life;

   c. Use of a compression glove on the right hand, with permanent impairment to the right hand and right upper extremity,

   d. Acupuncture as well as psychological counseling sessions and psychiatric treatment as a result of post-traumatic stress from the electrical explosion, and

   e. Plaintiff can no longer be fully employed in her chosen profession of esthetician and has suffered significant lost wages and will suffer substantially reduced

7

earnings and wages for the rest of her working career – all as a result of the negligence described above.

**WHEREFORE**, Plaintiff, Kyvette Z. Gidderon, claims damages against Defendant, Cynosure, Inc., in an amount that may exceed Seventy-Five Thousand Dollars ($75,000.00) to include the costs of this action.

**Count II**
**(Strict Liability)**

38. The allegations contained in Paragraphs 1 through 37 are fully incorporated as though they were fully restated herein;

39. At all times material hereto, Defendant was a designer, manufacturer, distributor, and seller of the Elite+ laser-based hair removal device that is the subject of the action;

40. The laser device that Defendant designed, manufactured, distributed, and/or sold as a model Elite+ was, at the time it left Defendant's control, defective and unreasonably dangerous for its ordinary and expected use;

41. The laser device that the Defendant designed, manufactured, and/or sold was delivered to the Plaintiff without any change in its defective condition;

42. The laser device that Defendant designed, manufactured, distributed, and/or sold was used in the manner expected and intended by the Plaintiff, fully trained in its proper usage;

43. Defendant owed a duty of care to Plaintiff to design, manufacture, distribute, and/or sell laser devices that were reasonably safe in design and construction, and that were free of potentially deadly defects injurious to users. Defendant breached this duty;

44. Defendant owed a duty of care to Plaintiff to design, manufacture, distribute, and sell each of its laser devices that were fit for hair removal and safe to the extent contemplated by a reasonable consumer. Defendant breached this duty;

45. As a direct and proximate result of the defective and unreasonably dangerous condition of the Elite+ laser device that the defendant manufactured, distributed, and/or sold, the Plaintiff sustained the aforementioned damages.

**WHEREFORE**, Plaintiff, Kyvette Z. Gidderon, claims damages against Defendant, Cynosure, Inc., in an amount that may exceed Seventy-Five Thousand Dollars ($75,000.00) to include the costs of this action.

### Count III
### (Breach of Warranty)

46. The allegations contained in Paragraphs 1 through 45 are fully incorporated as though they were fully restated herein;

47. Defendant, being a corporation doing business in the State of Maryland, is liable to Plaintiff for breaching express and implied warranties that it made regarding the defective product that Plaintiff's employer purchased, and Plaintiff used;

48. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use. Specifically, Defendant expressly warranted, through its sale to the public of Elite+ laser-based hair removal devices and by the statements and conduct of its employees and agents, that the aesthetical and medical equipment it sold was fit for its intended use and not otherwise injurious;

49. Plaintiff alleges that the defective Elite+ laser device that Defendant sold to her employer and which she used would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability;

50. Plaintiff alleges that the defective Elite+ laser device that Defendant sold to her employer was not fit for the uses and purposes intended, *i.e.,* safe hair removal, and that this product was therefore in breach of the implied warranty of fitness for its intended use;

51. Plaintiff gave Defendant notice of the breach of warranty and defective nature of the goods; and

52. As a direct and proximate result of Defendant's breach of warranty, Plaintiff sustained aforementioned damages.

**WHEREFORE**, Plaintiff, Kyvette Z. Gidderon, claims damages against Defendant, Cynosure, Inc., in an amount that may exceed Seventy-Five Thousand Dollars ($75,000.00) to include the costs of this action.

### Count IV
### (Products Liability – Defect in Design)

53. The allegations contained in Paragraphs 1 through 53 are fully incorporated as though they were fully restated herein;

54. The Elite+ laser device was placed into the stream of commerce and sold by Defendant in a defective and unreasonably dangerous condition in that the design of the device was such that it failed to incorporate something – an automatic cutoff switch, circuit breaker or other mechanism – that would protect the hand of a user if the device malfunctioned and the handpiece became dangerously electrified;

55. The laser device reached Plaintiff without any substantial change in its condition and was in that same condition at the time of the injury hereafter alleged;

56. On July 21, 2017, while Plaintiff was using the laser device in the foreseeable manner for hair removal, the device exploded and its energized handpiece electrocuted Plaintiff, thereby severely burning her right hand;

57. The traumatic electroshock of Plaintiff's hand occurred because of the defective design of the laser device. If the device had not been defectively designed, Plaintiff's right hand would not have been injured at all or would have been injured far less severely than it was;

58. As a direct and proximate result of Defendant's acts and omissions in the defective design of its laser-based products, Plaintiff sustained the aforementioned damages.

**WHEREFORE**, Plaintiff, Kyvette Z. Gidderon, claims damages against Defendant, Cynosure, Inc., in an amount that may exceed Seventy-Five Thousand Dollars ($75,000.00) to include the costs of this action.

Respectfully submitted,

*/s/ Christopher L. Beard*

CHRISTOPHER L. BEARD
CPF #7612010016
170 West St.
P.O. Box 2271
Annapolis, MD 21404-2271
Tel.: (410) 267-0227 | Fax: (888) 294-5730
e-mail: chris@attorneybeard.com
*Attorney for Plaintiff*

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

KYVETTE Z. GIDDERON  
8055 Greenleaf Terr., Apt 33  
Glen Burnie, MD 21061-4695  

    *Plaintiff*

v.

CYNOSURE, INC.,  
a Delaware corporation having  
principal offices in Massachusetts,  
5 Carlisle Rd.  
Westford, MA 01886-3601  

    <u>Serve On:</u>  
    CT CORPORATION SYSTEM,  
    Resident Agent  
    155 Federal St., Ste. 700  
    Boston, MA 02110-1727  

    *Defendant*

Civil No.: _____

\* \* \* \* \* \* \*

## **DEMAND FOR JURY TRIAL**

Sir or Madam Clerk:

    Plaintiff demands a trial by jury.

                   Respectfully submitted,

                   */s/ Christopher L. Beard*  
                   Christopher L. Beard  
                   P.O. Box 2271  
                   170 West St.  
                   Annapolis, MD 21401-2824  
                   Tel.: (410) 267-0227 | Fax: (888) 763-8394  
                   e-mail: chris@attorneybeard.com  
                   *Attorney for Plaintiff*